UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MANOPLA, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>BRYANT, HODGE AND ASSOCIATES, LLC,<br><br>  Defendant. | Civil Action No. 13-0338 (JAP)<br><br>REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT |

**THIS MATTER** comes before the Court by way of a Motion for Entry of Default Judgment filed by Plaintiffs Maurice and Fortuna Manopla (collectively "Plaintiffs") against Defendant Bryant, Hodge and Associates, LLC ("Defendant" or "Bryant Hodge") on their claim that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, arising out of Defendant's failure to appear, answer or otherwise respond to Plaintiffs' Complaint of January 17, 2013. [Docket Entry No. 6]. In addition to seeking entry of default judgment, Plaintiffs seek an Order awarding statutory damages of $1,000 for each Plaintiff, $350 for filing fees, $90 for service of process fees, attorney's fees of $5,140, and emotional distress damages of $2,500 for each Plaintiff, for a total of $12,580 in damages.

The Honorable Joel A. Pisano, U.S.D.J., referred the motion to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned then conducted a hearing on January 14, 2014, at which Yitzchak Zelman, Esq., of the Law Offices of Alan J. Sasson, P.C., appeared to respond to questions with regard to the bases for the motion for default judgment. For the reasons set forth below, the undersigned respectfully recommends that

1

Plaintiffs' Motion for Entry of Default Judgment be GRANTED, and that the requested damages be GRANTED in part and DENIED in part.

## I. BACKGROUND[1]

As alleged in the Complaint, "Defendant, on its behalf, or on behalf of a third-party, began collecting an alleged consumer debt from the Plaintiffs." Complaint ¶9. "[T]he Defendant began its collection efforts and campaign of communicating with the Plaintiffs on or about September 12, 2012, by calling the Plaintiffs on their home telephone and leaving a message." *Id.* ¶10. In the voice message, which was overhead by Plaintiffs' son, Defendant indicated that it was "a debt collector attempting to collect an alleged debt." *Id.* ¶13. Because the voice mail was difficult to understand, Plaintiff's son called Defendant back to determine for whom the message was intended. *Id.* ¶12. During that return call, Plaintiffs' son "was greeted with a pre-recorded message which stated that Defendant is a professional debt collector. When Defendant's representative came on the line, Plaintiffs' son was told the Defendant was trying to reach Plaintiff Maurice Manopla." *Id.* ¶12.

Plaintiffs filed their Complaint on January 17, 2013. [Docket Entry No. 1]. They assert that the two interactions, Defendant's voice message on Plaintiffs' answering machine as well as the call from Plaintiffs' son to Defendant, disclosed to their son, a non-consumer third party, that Defendant was a debt collector and that Plaintiffs owed a debt. *Id.* According to the Complaint, this was a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692c (b), which "prohibits a debt collector from disclosing to an unauthorized third party that the consumer is

---

[1] For purposes of this motion, and by virtue of Defendant's having defaulted, the facts alleged in the Complaint are deemed to be true, except insofar as they pertain to damages. *See, e.g., Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *Ford v. Consigned Debts & Collections, Inc.*, No. 09-3102, 2010 WL 5392643, at *2 (D.N.J. Dec. 21, 2010).

being contacted by a debt collector concerning a debt without permission from the consumer." *Id*. Plaintiffs assert, in affidavits, that they are suffering emotional distress as a result of their son's learning that Plaintiffs are not financially stable. Maurice Manopla Aff. ¶9 [Docket Entry No. 6-4]; Fortuna Manopla Aff. ¶9 [Docket Entry 6-5]. Plaintiffs assert that they "had trouble falling asleep for weeks afterwards, and still experience difficulty communicating with [their] son." *Id.*

The docket reflects that Defendant was served with the Complaint on February 6, 2013. [Docket Entry No. 3]. Under the Federal Rules of Civil Procedure, a defendant must file a responsive pleading to a complaint within twenty-one days of service. Fed. R. Civ. P. 12(a). Defendant has failed to file any responsive pleading or to otherwise appear within the timeframe allowed, nor has that time been extended. Brief in Support of Plaintiffs' Motion for Entry of Default Judgment ("Plaintiffs' Brief") at 6. On May 29, 2013, Plaintiffs requested that the Clerk's Office enter default based on Defendant's failure to respond to the Complaint. [Docket Entry No. 5] Default was entered on May 30, 2013. On June 10, 2013, Plaintiff filed this motion. On November 27, 2013, Plaintiffs filed an Affidavit of Service, reflecting that the Motion for Default Judgment had been served on Defendant on June 10, 2013 as well. [Docket Entry No. 7].

## II. LEGAL STANDARD

### A. Default Judgment

Federal Rule of Civil Procedure 55 governs the entry of default judgment, and requires that a plaintiff first obtain an entry of default from the Clerk of the Court. Fed. R. Civ. P. 55(a). Where a plaintiff's claim is not for a sum certain or a sum that can be made certain by computation,

application must be made to the court. Fed. R. Civ. P. 55(b). The decision to grant a motion for default judgment is committed to the court's discretion. *United States v. $ 55,518.85 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984); *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). A plaintiff is not entitled to default judgment as a matter of right; the court determines whether default judgment is appropriate. *Hritz*, 732 F.2d at 1180.

"[B]efore entering a default judgment the Court must decide whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Ford v. Consigned Debts & Collections, Inc.*, No. 09-3102, 2010 WL 5392643, at *2 (D.N.J. Dec. 21, 2010) (quoting *Chanel v. Gordashevsky,* 558 F. Supp. 2d 532, 535 (D.N.J. 2008). "If a review of the complaint demonstrates a valid cause of action, the Court must then determine whether plaintiff is entitled to default judgment." *Id.* After the court finds the complaint demonstrates a valid cause of action, there are three factors courts examine to determine whether a default judgment should be granted: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

### B. The Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, *et seq.*, regulates debt collection practices. Among the FDCPA's restrictions is a prohibition against debt collectors communicating with third parties. 15 U.S.C. § 1692c(b). Unless authorized, "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer . . . ." *Id.* Such a communication may include leaving a voice message relating to the debt collection on an answering machine that family members or other

non-consumer third parties might overhear. *See, e.g., Strouse v. Enhanced Recovery Co., L.L.C.*, No. 12-4417, 2013 WL 3870017, at *5 (E.D. Pa. July 29, 2013) (citing *F.T.C. v. Check Enforcement*, No. 03-2115, 2005 WL 1677480, at *8 (D.N.J. July 18, 2005)); *Berg v. Merchants Ass'n Collection Div., Inc.*, 586 F.Supp.2d 1336, 1343 (S.D. Fla. 2008) (plaintiff who alleged that debt collector left a message on plaintiff's answering machine without advising plaintiff to disconnect if others were present stated a claim under the FDCPA).

A debt collector who fails to comply with this provision is liable for damages in a civil suit brought by the consumer. 15 U.S.C. § 1692k(a). Under the FDCPA, a "consumer" is defined as an individual obligated or allegedly obligated to pay any debt. 15 U.S.C. § 1692a(3). The FDCPA expressly expands the definition of "consumer" to include the consumer's spouse. 15 U.S.C. § 1692c(d).

The damages that can be awarded for a violation of the statute include: (1) any actual damages sustained by the consumer as a result of the violation, 15 U.S.C. § 1692k(a)(1); (2) up to $1,000 in additional damages as the court may allow, § 1692k(a)(2)(A); and (3) costs of the action and a reasonable attorney's fee as determined by the court, § 1692k(a)(3). Factors for a court to consider when determining damages include "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional." 15 U.S.C. § 1692k(b)(2). A debt collector may not be liable if it shows by a preponderance that its violation was not intentional, but the result of a bona fide error despite procedures reasonably adapted to avoid such infractions. 15 U.S.C. § 1692k(c).

## III. ANALYSIS

By way of the present motion, Plaintiffs seek entry of default judgment, as well as an award of damages totaling $12,580. The Court will first evaluate and make a recommendation as to whether Default Judgment is appropriate and if it is, then make a recommendation as to the amount of damages to which Plaintiffs may be entitled.

### A. Default Judgment

At the outset, the undersigned notes that default was first appropriately granted, as a predicate to this motion. The Complaint was served on Defendant and Defendant failed to appear or otherwise respond to Plaintiffs' claims. Plaintiffs then complied with Fed. R. Civ. P. 55(b)(1) by obtaining an entry of default from the Clerk of the Court prior to moving for default judgment. [Docket Entry No. 5].

Next, the Court turns to whether Plaintiffs have stated a cause of action against Defendant based upon the allegations set forth in the Complaint. Plaintiffs allege that Defendant violated the FDCPA by disclosing to a third party that one of the Plaintiffs owed a debt. In *Ford v. Consigned Debts,* 2010 WL 5392643, at *2,* a case which is factually similar to the instant action, the court noted that "[t]o prevail on a claim under the FDCPA, a plaintiff must prove that a 'debt collector['s]' effort to collect a 'debt' from a 'consumer' violated some provision of the FDCPA." The court in *Ford* went on to point out that the FDCPA is a strict liability statute, whose purpose is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.* (quoting 15 U.S.C. § 1692e). A "debt collector" is defined in § 1692a(6) as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." In § 1692a(5), the FDCPA defines "debt," in pertinent part, to mean "any obligation or alleged obligation of a consumer to pay money." Thus, a threshold requirement for a violation of the FDCPA is that the alleged violations were in furtherance of an effort to collect a debt. Here, Plaintiffs have asserted that Defendant is a debt collector that attempted to collect a debt from them, therefore meeting that threshold requirement.

The FDCPA further provides that "without the prior consent of the consumer given directly to the debt collector, . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer . . . ." 15 U.S.C. § 1692c(b). Plaintiffs assert that Defendant violated this provision by communicating to Plaintiffs' son that his parents owe a debt. At the hearing conducted on January 14, 2014, Plaintiffs' counsel clarified that Plaintiffs allege that there were in fact two violations: first, by leaving a voice message in which Defendant identified itself as a debt collector and spelled out the name of Fortuna Manopla, Complaint ¶11, and then again, when Plaintiffs' son called Defendant back, heard the recorded message identifying Defendant as a debt collector, and a representative then came on the line and indicated that it was Maurice Manopla Defendant was trying to contact. Id. ¶12.

Plaintiffs offer no case law in support of their claim that these contacts violate the FDCPA. Nonetheless, the case law referenced above makes clear that a voice message that identifies the call as relating to debt collection and does not warn the listener to hang up if others are present may be a violation of the FDCPA. Accordingly, the undersigned respectfully recommends that the first contact, by which Defendant left a voice message on Plaintiffs' answering machine, be deemed a violation of the FDCPA.

7

The facts are not as clear, however, with regard to the second contact, which was initiated by Plaintiffs' son, not by Defendant. Even taking as true the factual allegations of the Complaint, it remains unclear as to whether Plaintiffs' son identified himself as a non-consumer when he called, or whether he was asked to do so. The facts as pled are therefore insufficient to establish that this contact constituted a second violation of the FDCPA.

Given the undersigned's conclusion that Plaintiffs have stated a viable cause of action under the FDCPA with regard to the first contact, the next inquiry is whether Plaintiffs are entitled to default judgment. *Ford,* 2010 WL 5392643, at *2. For that determination, the Court must look to the three factors set forth in *Chamberlain,* 210 F.3d at 164.

The first factor is whether Plaintiffs will be prejudiced if the motion is denied. Defendant has neither responded to Plaintiffs' Complaint nor opposed this motion for default judgment. Defendant's continued failure to respond has left Plaintiffs with no other recourse to adjudicate their claims against Defendant for violations of the FDCPA. *Ford,* 2010 WL 5392643, at *4. Thus, it appears that Plaintiffs will be prejudiced if default judgment is not granted.

The second factor in *Chamberlain* is "whether the defendant appears to have a litigable defense." *Chamberlain*, 210 F.3d at 164. "A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 869-70 (3d Cir. 1984). In as much as Defendant has never responded to Plaintiffs' Complaint, there is no evidence that Defendant's violation "was not intentional, or resulted from a bona fide error." 15 U.S.C. § 1692k(c) ("A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation

was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."). Furthermore, the undersigned has already concluded that the factual allegations of the Complaint are sufficient to state a claim as to one violation of the FDCPA. Accordingly, there appears to be no basis to deny the default judgment based upon the existence of a meritorious defense.

The third factor is "whether defendant's delay is due to culpable conduct." *Chamberlain*. 210 F.3d at 164. Generally, conduct may be found to be culpable when it is willful or in bad faith. *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123 (3d Cir. 1983). Courts have found that when a plaintiff has shown some proof that a defendant was properly served, the defendant is deemed aware of the action and the claims asserted against it. *See Ford,* 2010 WL 5392643, at *4. Here, there is evidence that Defendant was served, both with the Complaint and with the Motion for Default Judgment. As a result, there does not appear to be any evidence to show Defendant's failure to respond in the instant action was a result of anything besides Defendant's own culpable conduct. *Id.*

Because Plaintiffs will be prejudiced if default judgment is not granted, Defendant does not appear to have a meritorious defense, and Defendant's failure to respond is the result of culpable conduct, it is respectfully recommended that default judgment be entered in Plaintiffs' favor on their FDCPA claims pursuant to Fed. R. Civ. P. 55.

### B. Remedies

Next, the Court must determine the amount of damages to which Plaintiffs are entitled. Plaintiffs seek an award totaling $12,580, including statutory damages of $1,000 for each Plaintiff, filing fees in the amount of $350, costs for service of process in the amount of $90, attorneys' fees

amounting to $5,140, and damages for emotional distress of $2,500 for each Plaintiff. Plaintiffs rely upon their own Affidavits [Docket Entry Nos. 6-4 and 6-5], as well as cases from the Second Circuit Court of Appeals in support of the claim for damages, which Plaintiffs refer to as governing this matter. See Plaintiffs' Brief at 8-12.[2]

### 1. Statutory and Actual Damages

"A debt collector who violates the FDCPA is liable for actual damages," as well as statutory damages as the court deems appropriate. 15 U.S.C. § 1692k(a). Under the FDCPA, statutory damages cannot exceed $1,000 per lawsuit per plaintiff, rather than $1,000 per violation. 15 U.S.C. § 1692k(a)(2)(A); *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1178 (9th Cir. 2006). Actual damages may include damages for emotional distress. *Ford.* 2010 WL 5392643, at *5. "Proof of physical injury is not necessary to obtain an award of emotional distress damages under the FDCPA." *Id.* Even so, "actual damages are minimal for emotional distress absent any indication that mental health treatment has been obtained or that the emotional distress has concretely affected a plaintiff's personal or professional life. Moreover, even in cases where a plaintiff has suffered permanent personal and professional damages, the damages awards are relatively small . . . ." *Id.*

Whether statutory damages should be granted, and if so, whether the full amount of $1000 should be allowed, is committed to the discretion of the court. *See Harvey v. United Adjustors*, 509 F.Supp. 1218, 1222 (D. Or. 1981). In exercising that discretion, courts look to the nature of the violation. If the violation is especially egregious, or if plaintiffs show that it was repeated and

---

[2] At the hearing on January 14, 2014, the undersigned pointed out to counsel that this Court is part of the Third Circuit. Counsel then asked for leave to supplement the legal support for this motion to include cases from this Circuit. That request was granted and counsel was given until January 17, 2014 to make the supplemental submission. Counsel has not submitted anything further, nor has he requested additional time to do so.

persistent, courts are more likely to award the full amount. *See, e.g., Crossley v. Lieberman*, 868 F.2d 566, 572-73 (3d Cir. 1989) (affirming award of full $1000 where court found behavior was especially egregious in implying that an elderly widow was about to lose her home because of a minor debt); *Edwards v. Niagara Credit Solutions, Inc*., 586 F.Supp. 2d 1346, 1354 (N.D. Ga. 2008) (granting $1000 statutory damages where violation was repeated and there was evidence of a policy and practice of violation). When, however, the violation is shown to be technical in nature and infrequent, courts have exercised their discretion to deny or reduce statutory damages. *See Weiss v. Zwicker & Associates, P.C*., 664 F.Supp. 2d 214, 218 (E.D.N.Y 2009) (awarding $500 in statutory damages when noncompliance with the statute was neither intentional nor abusive); *Sweetland v. Stevens & James, Inc.,* 563 F.Supp. 2d 300, 305 (D. Me. 2008) (awarding $250 in additional or statutory damages despite the abusive nature of the calls because the calls were neither frequent nor persistent, and there was no evidence that the violations were intentional); *Bingham v. Collection Bureau, Inc*., 505 F.Supp. 864, 876 (D. N.D. 1981) (limiting statutory damages to $400 because, although the harassing calls were intentional, they were not frequent and persistent); *O'Connor v. Check Rite, Ltd*., 973 F.Supp. 1010, 1020 (D. Colo. 1997) (denying statutory damages where contact was not shown to be frequent, persistent or intentional).

Actual damages are not required in order for a plaintiff to recover statutory damages under the FDCPA. *McCammon v Bibler*, 493 F.Supp.2d 1166, 1171 (D. Kan. 2007). When actual damages are alleged, however, the key consideration is the impact that the violation had on the plaintiffs. *See, e.g., Sweetland,* 563 F.Supp.2d at 304 (considering fact that debtor fully recovered from any trauma suffered and did not lose time from work in limiting amount of actual damages). While affidavits detailing emotional distress have been held to be sufficient to support a claim for

actual damages, those affidavits should be more than conclusory or boilerplate statements. *Tallon v. Lloyd & McDaniel*, 497 F.Supp.2d 847, 850-51 (W.D. Ky. 2007) (conclusory statements of humiliation, embarrassment, anxiety and sleeplessness were insufficient to support more than *de minimis* actual damages). Furthermore, the court will examine the underlying contact to evaluate whether it was sufficiently egregious to have caused the injury alleged. *See, e.g., Chiverton v. Federal Financial Group, Inc.,* 399 F.Supp.2d 96, 102 (D. Conn. 2005) (awarding $5000 when repeated calls to plaintiff's workplace made him fear he would lose his job and a promotion); *but see Obenauf v. Frontier Financial Group, Inc.,* 785 F.Supp.2d 1188, 1199 (D. N.M. 2011) (awarding $150 for emotional distress when plaintiffs complained that the debt collector's calls "pretty much ruined [his and his wife's] day whenever [FFG] called.")

The *Ford* decision is instructive with regard to damages. There, the defendant made several calls to the plaintiff. First, the defendant left a message in which it did not identify itself as a debt collector. *Ford,* 2010 WL 5392643, at *7. In the second call, the plaintiff alleged that the defendant threatened to sue the plaintiff and contact his parole officer to have him thrown back in jail if he did not immediately pay his debt. *Id.* In the third call, the defendant spoke with the plaintiff's sister and told her the case had already been referred to an attorney. *Id.* The court noted that the alleged violations "essentially revolved around one threatening phone call, and plaintiff suffered a few weeks of anxiety regarding it." *Id.* While the court found that the plaintiff was entitled to statutory damages because there had been a violation of the FDCPA, it found that there was no basis for either $50,000 in actual damages or the maximum $1000 in statutory damages. *Id.* The court noted that the "maximum statutory damage award is only assessed in cases where there has been repetitive and egregious FDCPA violations, and even in

such cases, the statutory awards are often less than $1,000." *Id.* at *5. Additionally, absent any indication that mental health treatment was needed or that the emotional distress somehow concretely affected the plaintiff's personal or professional life, actual damages for emotional distress should be minimal. *Id.* The court ultimately awarded the plaintiff $350 in statutory damages and $200 in actual damages. *Id.* at *7.

Here, Defendant called Plaintiffs' residence once and left a voice message that was difficult to decipher, although it was clearly left by a debt collector. Plaintiffs' son then called Defendant back and consequently learned that Defendant was indeed a debt collector and that the message had been intended for his father. In their affidavits, which mirror each other, Plaintiffs simply state that "[a]s a result of the foregoing, I experienced intense shame, anxiety and embarrassment that my son had discovered that his parents were in debt. I had trouble falling asleep for weeks afterwards, and still experience difficultly communicating with my son after this experience." Plaintiffs' Affidavits ¶9.

The undersigned previously recommended a finding that there was a single violation of the FDCPA. Even if the second call, which Plaintiffs' son placed, is deemed a violation, this is hardly the type of conduct that courts have deemed egregious, nor was it repetitive. Plaintiffs complain of a single call initiated by Defendant, which was neither abusive nor threatening. The second call was initiated by Plaintiffs' son and there is no indication whether he identified himself as a third party or whether he was asked to identify himself before Defendant disclosed that the message had been intended for his father. While Plaintiffs contend in their brief in support of this motion that "[t]he Defendant's actions were not the product of any inadvertence, but rather of

13

repeated failures to accord its actions in compliance with the Fair Debt Collection Practices Act . . . [and] were egregious," Brief at 8, the record simply does not support that conclusion.

Nor do the cases support the argument, made at the January 14 hearing, that the maximum statutory damages should be awarded because that maximum has not been increased in the years since the FDCPA was originally enacted, despite inflation. Recent courts have granted less than the full amount, and there is no suggestion that courts have awarded the full amount simply because inflation has reduced its value. *See, e.g. Sweetland*, 563 F.Supp.2d at 305 (granting $250 in 2008); *Weiss*, 664 F.Supp.2d at 218 (granting $500 in 2009).

Accordingly, the undersigned respectfully recommends that the Court find that the maximum statutory penalty is not warranted. but rather that statutory damages should be awarded in the amount of $500 for each Plaintiff, based upon a review of the awards granted in other cases.

With regard to actual damages, Plaintiffs have not alleged that they sought or received mental health treatment or asserted that the incident has permanently affected their life in a negative way. Furthermore, the Affidavits that were submitted contain only a single paragraph setting forth the injury alleged in the most conclusory of terms. Both Plaintiffs signed identical Affidavits, with no detail whatsoever. *See, e.g. Tallon*, 497 F.Supp.2d at 850-51. Because the conduct was not egregious or repeated, and because Plaintiffs have failed to assert more than conclusory allegations of emotional distress, the undersigned respectfully recommends an award for Plaintiffs of $500 each in statutory damages and $250 each in actual damages.

### 2. Attorney's Fees and Litigation Costs

Next, the undersigned evaluates Plaintiffs' application for attorney's fees and litigation costs. Among the damages allowed to a successful plaintiff under § 1692k(a) is "the costs of the

action, together with a reasonable attorney's fee as determined by the court."

15 U.S.C. § 1692k(a)(3)). As with the other damages under the FDCPA, the court has broad discretion to determine the amount of fees and costs to be awarded a successful party. *See Ford, Ford,* 2010 WL 5392643, at *7. Only if the action was brought in bad faith or for harassment, 15 U.S.C. § 1692k(a)(3), or if the opposing party objects to the petitioner's application for fees may the court reduce the award by an amount the court is to determine. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 721 (3d Cir. 1989); *see also Zagorski v. Midwest Billing Services, Inc.,* 128 F.3d 1164, 1166 (7th Cir. 1997).

Courts use the lodestar method as a starting point to calculate reasonable attorney's fees. *Ford,* 2010 WL 5392643, at *7. The lodestar method is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The court must determine whether the attorney's hourly rate is appropriate given the attorney's skill, experience, and reputation." *Ford,* 2010 WL 5392643, at *7. The prevailing party must demonstrate with sufficient evidence, in addition to the attorney's own affidavits, that the requested fees and rates are akin to those prevalent in the area of practice for similar work by lawyers of comparable qualifications. *Id.*

Here, Plaintiffs' counsel has submitted a sworn affirmation stating that he has "practiced credit and collection law in Federal Courts since becoming licensed to practice law in New Jersey" in 2012 and Plaintiffs' lead counsel "has practiced in the field of credit and collection for the past seventeen (17) years." Plaintiff's Counsel's Affirmation in Support of Plaintiff's Motion for Entry of Judgment Pursuant to Clerk's Entry of Default and for Costs and Attorney's Fees ¶2-7 ("Counsel's Affirmation") [Docket Entry No. 6-2]. Counsel asserts that attorneys with his skill

15

and background in New York City regularly charge between $250 to more than $350 an hour and that his regular rate is $300 per hour. [Docket Entry No. 6]. Plaintiffs' lead counsel's ordinary rate is $400 per hour and that is the rate regularly charged for someone of his skill and background in New York City. Counsel's Affirmation ¶4-5. The costs sought total $440 for filing the Complaint and service on Defendant. Counsel's Affirmation ¶12. Counsel has attached a billing statement to his Affirmation, which details the bases for the fees and costs sought. [Docket Entry No. 6-3].

Here, a line-by-line review of the billing statement shows that the two attorneys handling this matter spent a combined total of 15.58 hours conducting legal research, preparing correspondence and pleadings, and drafting the present motion. *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001) (instructing that "it is necessary that the Court 'go line, by line, by line' through the billing records supporting the fee request.") This is similar to the amount of time found reasonable in *Ford*, in which the Court allowed fees for 17.5 hours of legal work without question. *Ford,* 2010 WL 5392643, at *8.

The Court also notes that when counsel appeared on January 14, he asked for leave to amend his application for fees to include the cost of that appearance. The undersigned granted leave, but counsel elected not to supplement his application. The undersigned is satisfied that the time reflected on the billing sheets is not unreasonable for the amount of work done, nor is the billing rate out of line with that of other attorneys performing this type of work in the area.

Accordingly, the undersigned concludes that Plaintiffs' counsel should be entitled to an award of fees and costs in the amount sought, including $5,140 in attorney's fees and $440 in litigation costs, and it is therefore respectfully recommended that Plaintiffs' motion be granted in

the total amount of $5,580. The total amount of damages recommended to be awarded, including statutory and actual damages, as well as fees and costs, is therefore $7080.

IV. **CONCLUSION**

For the foregoing reasons, and for good cause shown,

**IT IS** on this 11th day of February, 2014,

**RECOMMENDED** that Plaintiffs' motion for default judgment against Defendant [Docket Entry No. 6] be **GRANTED**; and is further

**RECOMMENDED** that Plaintiffs be awarded statutory damages in the amount of $500 each and actual damages in the amount of $250 each; and it is further

**RECOMMENDED** that the request for attorney's fees and costs be granted in its entirety in the amount of $5,580; and it is further

**RECOMMENDED** that damages in the total amount of $7080 should be awarded.

**LOIS H. GOODMAN**
**United States Magistrate Judge**

Pursuant to Local Civil Rule 72.1(c)(2), the parties have fourteen days from the date of this Report and Recommendation to file and serve objections to the proposed findings and recommendations.